COLLINS H. FERRIS AND BONNIE BACH FERRIS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Ferris v. Commissioner
Docket No. 7800-74
United States Tax Court
T.C. Memo 1977-186; 1977 Tax Ct. Memo LEXIS 258; 36 T.C.M. (CCH) 765; T.C.M. (RIA) 770186; June 14, 1977, Filed Floyd A. Brynelson, for the petitioners. Joseph R. Peters, for the respondent. GOFFE
MEMORANDUM FINDINGS OF FACT AND OPINION GOFFE, Judge: The Commissioner determined a deficiency in petitioners' Federal income tax for the taxable year 1971 in the amount of $37,023.59. The sole issue for decision is the extent to which the cost of a swimming pool addition to petitioners' home qualifies as a medical expense under section 213, [1] Internal Revenue Code of 1954. *259 FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and the exhibits attached thereto are incorporated by this reference. Petitioners Collins H. and Bonnie Bach Ferris, husband and wife, resided in Madison, Wisconsin, at the time they filed their petition in this proceeding. Petitioners filed their joint Federal income tax return for the taxable year 1971 with the Midwest Service Center, Kansas City, Missouri. In 1969 Bonnie Bach Ferris (hereinafter petitioner) began suffering from a girdling pain and numbness in her spinal cord which was the result of an injury to the T 10-11 vertebra in her youth. Her physician recommended physical therapy for the strengthening of her back by means of daily periods of swimming. By 1970 she was suffering from a compression lesion of the lateral spinalthalamic tract of the spinal cord causing weakness, spasmodic pain and neurological loss to the leg. Commencing in 1970 petitioner was required to use a cane for support when walking and suffered excruciating pain in a sitting position. Her physician recommended that she *260 install a swimming pool at her home and use it twice daily for the rest of her life in order to prevent the permanent disability of paralysis. In 1971 petitioner decided to construct a swimming pool addition to her residence located in Madison, Wisconsin. The house was principally of cut stone construction with minor amounts of brick and stucco, consisted of 6,318 square feet of living space and had a fair market value in 1971 of $275,000. John F. Flad and Associates, Inc., was engaged to prepare plans and specifications for the swimming pool addition. J. H. Findorff and Son, Inc., a builder and contractor in Madison, constructed the addition to petitioner's residence at a cost of $176,964. Architectural and engineering fees in the amount of $17,696 were also incurred. Included in the pool addition were certain items not essential to the operation of the pool; namely, a chimney and cooking grill, a sauna bath, a kitchen counter and appliances, a diving board, dressing room cabinets, sheet metal duct work, one bathroom and dressing room, ceramic tile surrounding the pool, and an open terrace. The total cost of these items was $22,500. The materials and workmanship of the *261 structure complement the materials and workmanship of petitioner's original residence. A large portion of the cost of the swimming pool addition was attributable to the need of having the addition architecturally and aesthetically compatible with petitioner's residence. On Schedule A of their Federal income tax return for the taxable year 1971, petitioners included $86,000 of the total cost of the swimming pool addition as a medical expense. This amount was computed as follows: Pool Addition Cost
$194,660
Non-Essential Items
22,500
Indicated Total Cost
$172,160
Less: Value added to residence
86,160
Economic Obsolescence
indicated by appraisal
$ 86,000 In his statutory notice of deficiency, the Commissioner determined that only one-half of the cost of the swimming pool ($6,500) qualified as a medical expense. OPINION In 1971 petitioner constructed a swimming pool addition to her home. Her physician had recommended that she install a swimming pool at her residence and swim twice daily for the rest of her life in order to prevent paralysis from resulting from a spinal injury. A large portion of the total cost of $194,660 was attributable to the need *262 to make the addition architecturally and aesthetically compatible with petitioner's residence. On their joint Federal income tax return for the taxable year 1971, petitioners included $86,000 of the cost of the addition as an item of medical expense. This figure was computed by reducing the cost of the addition by certain items not related to petitioner's medical care and the amount by which the value of petitioner's residence was increased by the "essential" portion of the addition. The sole issue for decision is the extent to which the cost of the swimming pool addition qualifies as a medical expense within the meaning of section 213, [2] Internal Revenue Code of 1954. *263 Respondent, having abandoned his position taken in the statutory notice of deficiency that no part of the addition other than the pool itself qualifies as a medical expense, contends that the expenditures were not incurred primarily for medical reasons and it is petitioner's burden to allocate the capital expenditure between the medical and non-medical portions in calculating the amount constituting a medical expense. He maintains that an enclosed pool satisfying petitioner's medical requirements could have been built for $70,000, that such addition would have increased the value of petitioner's residence by $31,000 and that the amount qualifying as a medical expense is limited to $39,000 under section 1.213-1(e)(1)(iii), Income Tax Regs. Petitioner's position is that a capital improvement for medical purposes is not limited to the cheapest type of structure and that the deduction was properly computed under the above paragraph of the regulations. Whether and to what extent a capital expenditure may qualify as a medical expense is governed by section 1.213-1(e)(1)(iii), Income Tax Regs., which provides in pertinent part as follows: (iii) Capital expenditures are generally not *264 deductible for Federal income tax purposes. See section 263 and the regulations thereunder. However, an expenditure which otherwise qualifies as a medical expense under section 213 shall not be disqualified merely because it is a capital expenditure. For purposes of section 213 and this paragraph, a capital expenditure made by the taxpayer may qualify as a medical expense, if it has as its primary purpose the medical care (as defined in subdivisions (i) and (ii) of this subparagraph) of the taxpayer, his spouse, or his dependent. Thus, a capital expenditure which is related only to the sick person and is not related to permanent improvement or betterment of property, if it otherwise qualifies as an expenditure for medical care, shall be deductible; for example, an expenditure for eye glasses, a seeing eye dog, artificial teeth and limbs, a wheel chair, crutches, an inclinator or an air conditioner which is detachable from the property and purchased only for the use of a sick person, etc. Moreover, a capital expenditure for permanent improvement or betterment of property which would not ordinarily be for the purpose of medical care (within the meaning of this paragraph) may, nevertheless, *265 qualify as a medical expense to the extent that the expenditure exceeds the increase in the value of the related property, if the particular expenditure is related directly to medical care. Such a situation could arise, for example, where a taxpayer is advised by a physician to install an elevator in his residence so that the taxpayer's wife who is afflicted with heart disease will not be required to climb stairs. If the cost of installing the elevator is $1,000 and the increase in the value of the residence is determined to be only $700, the difference of $300, which is the amount in excess of the value enhancement, is deductible as a medical expense. If, however, by reason of this expenditure, it is determined that the value of the residence has not been increased, the entire cost of installing the elevator would qualify as a medical expense. * * * It is apparently respondent's position that an allocation must be made between the medical and the personal elements of the total expenditure for the reason that the addition did not have as its primary purpose the medical care of petitioner. It was stipulated that petitioner's physician recommended that she install a swimming pool *266 at her home and use it twice daily for the rest of her life in order to avoid paralysis. It is obvious that an indoor pool had to have been constructed in order for her to be able to swim during the winter in Madison, Wisconsin. Therefore, we are satisfied that the swimming pool addition was constructed primarily for medical purposes and conclude that the amount qualifying as a medical expense must be computed by the method prescribed by section 1.213-1(e)(1)(iii), Income Tax Regs., and as utilized by petitioner. Respondent's concern is no doubt that a large portion of the total cost of the swimming pool addition was attributable to the need of having the structure architecturally and aesthetically compatible with petitioner's residence which is clearly a personal motivation. However, we are aware of no case limiting a medical expense within the meaning of section 213 to the cheapest form of treatment. For instance, if a taxpayer desires to stay in a private hospital room as opposed to a ward, or to patronize the most expensive medical institutions, the full amount of the expenditure qualifies as a medical expense. The ability to receive a tax benefit for any personal element *267 of a capital expenditure having for its primary purpose the medical care of the taxpayer is substantially curtailed by section 1.213-1(e)(1)(iii), Income Tax Regs., which limits the amount which may qualify as a medical expense to the difference between the total expenditure and the amount which the improvement enhances the value of related property. As a result of the limitation imposed by the regulations, approximately the same result is reached as under respondent's method of limiting the costs taken into consideration to those of a "bare bones" structure. As previously mentioned, respondent maintains that the cost of a pool and enclosing structure adequate to satisfy petitioner's medical needs could have been constructed for $70,000, that such a structure would have enhanced the value of the related property in the amount of $31,000 and that only $39,000 of the total cost of the addition qualifies as a medical expense. Even if we were to accept respondent's basic approach, we believe that his application of it to the facts of the instant case is erroneous in two respects.First, the hypothetical structure omits certain necessary costs. These are the costs relating to the spiral *268 staircase and the conversion of the screen porch which were necessary to minimize the distance petitioner had to walk to reach the pool, the sliding glass doors which were necessary to ventilate the pool area during the summer, the entrance steps at the shallow end of the pool, and certain intricacies of indoor pool construction such as water temperature, dew points and vapor barriers. Although we are unable to determine exactly the costs of such necessities, we believe that $10,000 would constitute a reasonable approximation, thus increasing the cost of the hypothetical structure to $80,000. Second, respondent would have us believe that such a "bare bones" structure would actually increase the total value of petitioner's property. However, based upon the testimony of Mr. Geib, a real estate appraiser in Madison, we are convinced that the hypothetical structure would not have enhanced the value of the related property and probably would have decreased it. Thus, under respondent's theory of limiting the costs taken into consideration to those of a minimal structure, the entire $80,000 would qualify as a medical expense pursuant to section 1.213-1(e)(1)(iii), Income Tax Regs. This *269 amount is virtually identical to the figure used by petitioner as modified by us below. In our opinion, the costs allocable to the space occupied by the non-essential items, including that space occupied by the steps at the deep end of the pool [3] and approximately six feet of the width of the elevated sitting area should also have been deducted from the total cost of the addition before applying the obsolescence factor to the remaining cost. Such space, like the various non-essential items which petitioner deducted from the total cost, bears no relationship to the medical care of petitioner. It appears that the amount of this space approximates 500 square feet. Based upon the testimony of Mr. Cote and the available cost data, we conclude that the portion of the total cost allocable to such unnecessary space was $8,000 and should have been deducted from the total cost of the addition before applying the 50 percent obsolescence factor. This modification of petitioner's calculation would reduce the amount originally claimed as a medical expense by $4,000. *270 Accordingly, we hold that $82,000 of the total cost of the swimming pool addition qualifies as a medical expense under section 1.213-1(e)(1)(iii), Income Tax Regs.
Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended.↩
2. SEC. 213. MEDICAL, DENTAL, ETC. EXPENSES. (a) ALLOWANCE OF DEDUCTION.--There shall be allowed as a deduction the following amounts not compensated for by insurance or otherwise-- (1) the amount by which the amount of the expenses paid during the taxable year (reduced by any amount deductible under paragraph (2)) for medical care of the taxpayer, his spouse, and dependents (as defined in section 152) exceeds 3 percent of the adjusted gross income * * *. * * *
(e) DEFINITIONS.--For purposes of this section-- (1) The term "medical care" means amounts paid-- (A) for the diagnosis, cure, mitigation, treatment, or prevention of disease, or for the purpose of affecting any structure or function of the body * * *.↩
3. Although we consider the steps at the deep end of the pool to constitute a non-essential item, no separate reduction is required for the costs of the steps. Reducing the total costs of the addition by both the costs of the steps and the related space would result in a duplication.↩